In re Daphne COOPER, Debtor.

Gordon C. HALL, Executor of the Estate of Katharine T. Cooper, and Katharine C. Barstow, Appellants,

v.

Daphne COOPER and Merrill Lynch, Pierce, Fenner & Smith, Inc., Appellees.

BAP Nos. CC–81–1103–VGH, CC–81–1157–VGH.
Bankruptcy No. LA–80–06257–CA.
Adv. Nos. LA–80–2521–CA, LA–80–1615–CA.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 15, 1982.

Decided Oct. 1, 1982.

Philip C. Patterson, Philadelphia, Pa., for appellants.

No appearance for appellees.

Before VOLINN, GEORGE and HUGHES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

The primary issues in this appeal deal with a Bankruptcy Court's interpretation of a state court order and exception to dischargeability of a debt for defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). This appeal is burdened with a voluminous record involving interplay between the Bankruptcy Court and extensive state court probate proceedings, and the inordinately lengthy briefs of the appellant to which the appellee has responded, in this appeal, only by filing her trial brief.[1]

## I.

### BACKGROUND FACTS

In March, 1976, Katharine Cooper (hereinafter "Katharine") became ill and enlisted the aid of her daughter, Katharine Barstow (hereinafter "Barstow"), to carry out certain daily financial transactions, apparently at her direction. When Barstow became ill in the summer of 1976, Katharine's granddaughter (Barstow's niece), Daphne Cooper (hereinafter "Daphne"), began to carry out these daily financial transactions for her grandmother, a number of which were carried out through two joint survivorship bank accounts, checking account 4395 and savings account 3782, both of which were funded by monies belonging to Katharine.

Katharine passed away on September 28, 1978. Administration of the probate estate was under the auspices of the Court of Common Pleas of Chester County, Pennsylvania, Orphans' Court Division (hereinafter "Orphans' Court"). The date of death balances in the bank accounts were $1,069.08 in

1. As an indication of the relationship of effort expended by appellee to the relief sought, E.R. App. 36, shows that counsel for appellee expended on the *bankruptcy litigation* 344.5 hours with a time value of $29,280.00 plus $3,319.50 costs for a total of $32,599.50. Recovery of funds totalling some $14,000 is sought in Bankruptcy Court. How much time has been expended in what the Orphan's Court referred to "as this tediously protracted audit record" (E.R.App. 4, p. 2) is unknown, but Katharine's entire testamentary estate excluding the two subject accounts, is about $54,-000.00.

checking account 4395 and $12,841.19 in savings account 3782. Katharine bequeathed her entire residuary estate (after bequests to Barstow of her tangible personal property) to be held in trust for the benefit of Barstow for life with the remainder to Barstow's issue, or in the event of their default, to Katharine's issue.

On September 29, 1978, the day after Katharine's death, Daphne transferred the entire balance of $12,841.19 from savings account 3782 and $400 from checking account 4395 into her personal savings account at the Germantown Savings Bank (hereinafter "GSB account"). Thereafter, Daphne made a number of deposits to and withdrawals from the GSB account.

Apparently, Katharine's will named Gordon C. Hall (hereinafter "Hall") and Katharine's son (Daphne's father), Leslie T. Cooper, as executors of her estate and as trustees of the residuary trust provided for in her will. Due to illness, Leslie T. Cooper announced the appointments and Daphne was appointed in his place.

A dispute arose concerning the ownership of funds in checking account 4395 and savings account 3782 at the time of Katharine's death. Daphne was of the view that the funds were her property pursuant to the joint survivorship nature of the accounts. Barstow objected to Daphne's possession of the funds and petitioned the Orphans' Court to compel Daphne to turn over the account balances to the estate. Barstow argued that under Pennsylvania case law, both of these accounts were "convenience accounts" which lacked the requisite donative intent to effectuate a transfer from Katharine to Daphne of a true joint ownership interest with a right of survivorship and that because Daphne was in a fiduciary relationship with Katharine which shifted the burden of proof to Daphne to prove that any joint ownership interest with a right of survivorship in the accounts was made voluntarily, intentionally and intelligently. On January 8, 1980 the Orphans' Court entered an adjudication finding that

"[w]ith respect to checking account 4395, there would seem but little doubt but

that Daphne's name was added thereto on August 5, 1976, as a matter of convenience to decedent, and not with any donative intent on her part."

There was a dispute as to whether the savings account was a joint survivorship account. Ultimately the court found:

"The Auditing Judge accepts the testimony of Mrs. Dunn, the bank official, and hereby specifically finds as a fact that as between decedent and Daphne, at least, savings account 3782 in August, 1978, had been their joint account with right of survivorship by the execution of the signature cards by both, as she testified. This conclusion is fully justified by the unimpeached and uncontradicted testimony of this witness that she unequivocally identified decedent's signatures (plural) thereon."

The Orphans' Court also found that

"a position of trust and confidence was assumed by Daphne toward decedent beyond any question on May 1, 1978 when the subject savings account was opened in her name alone, a transaction which, . . . unquestionably cast Daphne in the position of a fiduciary. In legal contemplation, she thereby became the trustee of a *resulting trust* in decedent's favor for all of the deposits therein made." (Emphasis added).

Daphne's failure to produce evidence of donative intent by Katharine for savings account 3782 caused the Orphans' Court to sustain Barstow's position. The Orphans' Court accordingly "directed" Daphne

"to pay into the estate, in due course, the sum of $252.21 (the balance of the checking account 4395 not already advanced to or accounted for herein by accountants) and the sum of $12,841.19 (the date of death balance in savings account 3782), together with legal interest thereon from September 28, 1978, the date of decedent's death."

These determinations became a final judgment of the Orphans' Court on April 29, 1980.

## II.

### LITIGATION DURING BANKRUPTCY

On July 1, 1981, Daphne filed a bankruptcy petition under 11 U.S.C. Chapter 7. Daphne's schedule of debts included the amount which the Orphans' Court directed her to pay to Katharine's probate estate. On July 22, 1980, Daphne filed an adversary proceeding to invalidate the fixing of a judgment lien and for an order requiring the trustee and Merrill Lynch, Pierce, Fenner and Smith, Inc., to turn over funds claimed as exempt to the debtor under 11 U.S.C. § 522(f). This action was consolidated with an adversary proceeding concerning the same funds commenced by Barstow and Hall for reclamation of traceable proceeds of savings account 3782 and checking account 4894, for a deficiency judgment on proceeds which were not traceable, and for a determination that Daphne's debt to Katharine's probate estate is excepted from discharge under 11 U.S.C. § 523(a)(4). Hall and Barstow filed a motion for summary judgment which was not set for hearing. The case was submitted primarily on the basis of the Orphans' Court Determinations, live testimony of Daphne, and some depositions.

On March 11, 1981, the Bankruptcy Court below, by memorandum decision found and concluded that:

"The trust relationship set forth in the decision of the Orphan's Court was not the type of express trust which would give rise to a nondischargeable debt under Bankruptcy Code § 523(a)(4). As referred to by the Orphans' Court, it was a resulting trust or a constructive trust. In the case of *In re Thornton*, 544 F.2d 1005 (9th Cir.1976) the court stated that constructive trusts or trusts which are merely implied in law do not impart a fiduciary relationship. The findings of the Orphans Court support this conclusion. Its order created a legal obligation to pay a sum of money into the decedent's estate and defined a debtor-creditor relationship between the decedent's estate and the bankruptcy debtor.

*All but $2,864 of the funds in question were expended prior to the adjudication by the Orphans Court. The debtor learned of the adjudication some time after it was made. The debtor believed that the funds were her property and spent them in that good faith belief.* (Emph. added).

I conclude that this debt is dischargeable under § 523(a)(4) of the Bankruptcy [Code]."

On April 3, 1981, Hall and Barstow moved for reconsideration and supplementation of the Bankruptcy Court's March 11, 1981 memorandum decision. On April 10, 1981, Hall and Barstow moved for a stay of a final decision of the Bankruptcy Court pending the outcome of a petition which they had filed with the Orphans' Court to discharge Daphne as executrix of Katharine's estate and as trustee of the testamentary trust and for an interpretation by the Orphan's Court with respect to ownership of the proceeds of the two bank accounts and its earlier decision. On April 27, 1981, the Bankruptcy Court entered a judgment consistent with the March 11, 1981 memorandum decision, ordering Merrill Lynch, Pierce, Fenner & Smith, Inc., to turn over to Daphne all funds or property held by it in her name. The Bankruptcy Court also denied the motions for reconsideration and supplementation, and by separate order, denied the motion to stay. In the latter order, the Bankruptcy Court stated that any request to the Orphans' Court to determine ownership of the two bank accounts and proceeds thereof was in violation of the automatic stay of 11 U.S.C. § 362. Hall and Barstow withdrew the portion of their petition to the Orphans' Court which the Bankruptcy Court held was in violation of the automatic stay, and filed another adversary proceeding in the Bankruptcy Court to lift the automatic stay so that they could obtain a determination from the Orphans Court concerning ownership of the proceeds of the two bank accounts.

On May 6, 1981, the Orphans' Court removed Daphne as executrix of Katharine's estate and on May 15, 1981, removed Daphne as trustee of the testamentary trust for dissipating assets belonging to the probate estate. Hall and Barstow filed an-

other motion with the Bankruptcy Court to vacate and modify the April 27, 1981, decisions under Bankruptcy Rule 924 and Rules 60(b)(1), (2), (5) and (6) of the Federal Rules of Civil Procedure. The motion was based on the May 6, 1981 and May 15, 1981 decisions by the Orphans' Court. The motion to vacate and modify was denied by the Bankruptcy Court on June 22, 1981, on which date, the Bankruptcy Court also denied Hall and Barstow relief from the stay to obtain a determination of ownership of the bank account proceeds from the Orphans' Court.

Hall and Barstow have appealed the orders and judgments of the Bankruptcy Court which were made on April 27, 1981 and June 22, 1981. Essentially, appellants argue that the Bankruptcy Court erred by not allowing them (1) to recover or be awarded an equitable lien on the traceable proceeds of the subject bank accounts for the benefit of Katharine's estate, and (2) by not determining that any amounts which Daphne owed to the estate and which were not recoverable through traceable proceeds constituted a nondischargeable debt to Katharine's estate.

### III.

### ORPHANS' COURT DECISION

#### A. *TRACEABILITY*

■ The appellants in the Bankruptcy Court pleaded and prayed for an order that the Orphans' Court decision of January 8, 1980 and April 29, 1980, are binding on the Bankruptcy Court under the doctrines of *res judicata* and collateral estoppel. The appellants also relied heavily on these decisions to support their Bankruptcy Court claim to trace proceeds of the subject bank accounts into Daphne's bankrupt estate. Daphne did not particularly address the issue of *res judicata* or collateral estoppel but disputed appellant's interpretation that these Orphans' Court decisions authorized appellants to trace the bank account proceeds into Daphne's bankrupt estate.

The threshold questions involve the nature and effect of the findings and conclusions of the January 8, 1980 and April 29, 1980, decisions of the Bankruptcy Court. The doctrine of *res judicata* is a

"... salutory doctrine of repose that gives conclusive finality to a final, valid judgment; and, if the judgment is on the merits, precludes further litigation of the same cause of action between the same parties or those' in such legal relationship to them that they are said to be in privity and bound by the judgment.'

1B *Moore's Federal Practice* ¶ 0.401.

Collateral estoppel, or issue preclusion, comes into play where

"... there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended." 1B *Moore's Federal Practice* ¶ 0.441[2].

In the January 8, 1980 decision, the Orphans' Court made certain findings with respect to the ownership of the funds in checking account 4395 and savings account 3782. After making such findings, the Orphans' Court merely directed Daphne to pay a sum of money into Katharine's estate which apparently represented the amounts previously in the subject bank accounts at Katharine's death. The Orphans' Court made no findings or conclusions concerning the funds and assets to which the bank account proceeds were traceable or the right of an equitable lien thereon. Based on this record, the Bankruptcy Court found, primarily on the basis of *res judicata* and collateral estoppel, that the Orphans' Court decisions created a *legal* obligation for Daphne to pay a sum of money into the decedent's estate which defined a creditor-debtor relationship between Katharine's estate and Daphne. On the record before us, we cannot find that the Bankruptcy Court erred as a matter of law in so finding.

Appellants argue that references to ownership of the proceeds of the subject bank accounts and traceability in the Orphans' Court decisions of May 6, 1981 and May 15, 1981, should be conclusive and binding on

the Bankruptcy Court. We disagree. These later Orphans' Court decisions were made after the Bankruptcy Court applied the doctrines of *res judicata* and collateral estoppel to the prior Orphans' Court decisions, and further, there was a lack of identity of issues and causes of action in the Bankruptcy Court decision and the later Orphans' Court decisions. 1B *Moore's Federal Practice* ¶¶ 0.410 and 0.443[2]. The Bankruptcy Court was determining the ownership of the proceeds of the subject bank accounts and issues of dischargeability on the basis of the record and the evidence presented to it, while the later Orphans' Court decisions were determining Daphne's suitability as executrix and as residuary trustee of Katharine's testamentary trust. Appellants have not stated any basis which would compel the Bankruptcy Court to modify its decision so as to conform or comply with the later Orphans' Court decisions, nor have appellants demonstrated that the Bankruptcy Court abused its discretion in refusing to consider the findings of these subsequent decisions.

Appellants argue that the Bankruptcy Court erred by failing to lift the automatic stay to allow them to obtain a determination from the Orphans' Court with respect to ownership and traceability of the proceeds of the subject bank accounts. This argument also fails since, as stated below, the subsequent Orphans' Court decision does not overrule nor vitiate the Bankruptcy Court's prior decision. Even if the Bankruptcy Court had lifted the stay, a further decision by the Orphans' Court would not have been binding on the Bankruptcy Court.

## B. *DISCHARGEABILITY*

■ 11 U.S.C. § 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." The fiduciary capacity requirement of this section of the Code has consistently been limited to technical or express trust relationships and not to trusts which are imposed by operation of law. 3 *Collier on Bankruptcy* ¶ 523.14[c] (15th ed. 1982). *In re Thornton,* 544 F.2d 1005 (9th Cir.1976).

Prior to Katharine's death, Daphne performed certain financial transactions on Katharine's behalf. The relationship between them was clearly one of principal and agent. This was exemplified by the powers of attorney executed by Katharine.

The principal and agent relationship between Katharine and Daphne terminated by the express language of the powers of attorney and by operation of law upon Katharine's death. Daphne withdrew the funds from checking account 4935 and savings account 3782 the day after Katharine's death. At this time the record does not reveal the existence of an agency, let alone the existence of an express trust relationship between Daphne and the appellants except for a trust imposed by operation of law. This was the resulting trust identified in the January 8, 1980, Orphans' Court decision. The Orphans' Court described Daphne's relationship with her grandmother as one of trust and confidence but carefully avoided characterizing her as a trustee under an express trust. The Court stated that

> "[i]n legal contemplation she thereby became the trustee of the *resulting* trust in decedent's favor for all of the deposits therein made." (Emph. added).

At another point the Orphans' Court referred to an "ensuing trust."

In general, the principles of collateral estoppel and *res judicata* in discharge proceedings are stated in *Brown v. Felsen,* 439 U.S. 925, 99 S.Ct. 307, 58 L.Ed.2d 317 (1979), and *In re Houtman,* 568 F.2d 651 (9th Cir. 1978). Basically, the Bankruptcy Court is bound to review the prior record in the context of the discharge proceeding and to apply the principles where the record in the case before him, in effect, verifies the record in the non-bankruptcy proceeding.

The Orphans' Court and the Bankruptcy Court found that when Daphne took the funds which were part of Katharine's estate, she took them at a time when she was not an express trustee with respect to them. Acts contended as a basis for defalcation or fraud took place at a time when no express trust existed. As a result, § 523(a)(4) can-

not support excepting Daphne's debt from discharge.

The appellants also argue that Daphne's debt to Katharine's estate should be excepted from discharge for embezzlement under 11 U.S.C. § 523(a)(4) and for willful and malicious injury by the debtor to the appellants under 11 U.S.C. § 523(a)(6). This contention also fails since the Bankruptcy Court found that Daphne believed that the funds were her property and that she spent them in that good faith belief. Such a finding is not clearly erroneous based on testimony from Daphne in the Bankruptcy Court trial and the record from the Orphan's Court.

On the basis of the foregoing we AFFIRM the decisions and orders of the Bankruptcy Court and decline to award attorneys fees to appellants.

AFFIRMED.