[Civ. No. 26804. Fourth Dist., Div. One. May 30, 1984.]

In re the Marriage of SHIRLEY M. and BILLY J. THOMAS.
SHIRLEY M. THOMAS, Respondent, v.
BILLY J. THOMAS, Appellant.

634

COUNSEL

Blatchley & Shepersky and William E. Blatchley for Appellant.

Mitchell & Henry and Stephen C. Mitchell for Respondent.

OPINION

**WORK, J.**—Contending all state court judgments dividing military retirement benefits as community property which became final before June 26,

1981, the date Congress expressly declared the states may treat such funds according to laws of their jurisdictions[1] are void because of federal preemption, Billy J. Thomas attempts to appeal an unappealable order of the superior court finding him guilty of contempt for intentionally refusing to pay his former wife monthly portions of his military retirement as ordered by a final judgment of dissolution. We treat his appeal as a request for certiorari and deny it, holding he may not collaterally attack a judgment final before the date the Supreme Court filed its decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].[2]

### FACTUAL AND PROCEDURAL BACKGROUND

As part of a January 13, 1976, judgment of dissolution, the court ordered Billy to pay Shirley 45 percent of his military retirement pay, each month, as her community property interest. The judgment was not appealed.

On September 24, 1981, after *McCarty* v. *McCarty, supra,* 453 U.S. 210, was decided, Billy unsuccessfully asked the court to terminate his obligation to pay Shirley her share of the military retirement. The trial court's denial was based upon *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 378-380 [177 Cal.Rptr. 380], that *McCarty* did not alter community property rights litigated and judicially determined in dissolution judgments final before its effective date.

Billy neither appealed the trial court ruling denying his motion, nor complied with the payment requirements of the final judgment. He forthrightly concedes he deliberately chose to test the judgment's continuing validity by risking contempt sanctions. Shirley, when confronted by this act of legal machismo, proved game. Her order to show cause re contempt alleging Billy wilfully violated the judgment by not paying the separate sums ordered for August, September, October and November 1981 resulted in the court finding Billy guilty of four counts of contempt and imposing a $200 fine for each violation.

Billy challenges the court's contempt order on the grounds the portion of his 1975 divorce decree awarding part of his military retirement benefits to Shirley is void for lack of subject matter jurisdiction because *McCarty* holds Congress, in enacting the federal military retirement pay system, affirmatively deprived the state courts of the power to divide military retirement pay under state community property laws. He further meritlessly contends

---

[1]By passing the Federal Uniformed Services Former Spouses Protection Act (FUSFSPA), 10 United States Code section 1408.

[2]*McCarty* was filed June 26, 1981.

the existence of a final judgment does not preclude him from collaterally attacking the prior judgment and, in any event, dividing community interests in military retirement benefits is a prohibited assignment of military pay.

THE PRE-*McCARTY* STATE COURT DIVISION OF MILITARY RETIREMENT BENEFITS WAS WITHIN THE COURT'S POWER

We distinguish between preemption occurring when a congressional enactment expressly or impliedly prohibits the states' exercise of jurisdiction over certain subject matter (see *Kalb* v. *Feuerstein* (1940) 308 U.S. 433 [84 L.Ed. 370, 60 S.Ct. 343]; *Free* v. *Bland* (1962) 369 U.S. 663 [8 L.Ed.2d 180, 82 S.Ct. 1089]), and that type of superseding which occurs where state law and federal law are so inconsistent that state law must "give way" because it impedes the accomplishment and execution of Congress' full purposes and objectives. (*Ibid.; Hines* v. *Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 586-587, 61 S.Ct. 399].) This latter type of preemption requires states to defer their interests, under the supremacy clause, to federal interests, even though Congress has not expressed an intent to preclude state court jurisdiction. (*Savage* v. *Jones* (1912) 225 U.S. 501, 533 [56 L.Ed. 1182, 1194-1195, 32 S.Ct. 715].)

The distinction between the two types of preemption is significant. Where Congress exercises its plenary power to deprive state courts of jurisdiction over a particular subject, state court judgments purporting to exercise jurisdiction over the preempted subject are "nullities and vulnerable collaterally." (*Kalb* v. *Feuerstein, supra,* 308 U.S. 433.) Where, as in *McCarty,* a court interprets Congress' actions as "superseding" or "overriding" state law, this judicial finding of conflict does not necessarily imply a withholding of subject matter jurisdiction, although the enforcement of conflicting state judgments may be avoided by direct appeal.

The subject of domestic relations belongs to the states. (*Ex Parte Burrus* (1890) 136 U.S. 586, 593-594 [34 L.Ed. 500, 503, 10 S.Ct. 850].) The states' authority in the area of family law may not be displaced except pursuant to the clearest direction from Congress. "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted. *Wetmore* v. *Markoe,* 196 U.S. 68, 77 (1904). A mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden. *United States* v. *Yazell,* 382 U.S. 341, 352 (1966)." (*Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 11, 99 S.Ct. 802].) In enacting

the federal military retirement pay system (10 U.S.C. §§ 3911-3992), Congress simply provided for retired service members to receive retired pay. Neither the statute nor its legislative history suggests Congress positively required by direct enactment that state law be preempted.

Accordingly, we find at the time Billy and Shirley's final divorce decree was entered, there was no express or implied statutory prohibition to this state exercising jurisdiction over community property divisions of military retirement pay. Shirley received a percentage of Billy's military retirement pay according to well-established California community property law. (*French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41].) In *Fithian, supra,* the California Supreme Court rejected the contention Billy raises here, finding "no evidence that the application of California community property law interferes in any way with the administration or goals of the federal military retirement pay system . . . ." (*Id.* at p. 604.) Because it was settled law Billy's military retirement pay was community property, and the United States Supreme Court had not yet held otherwise (see *Fithian* v. *Fithian, supra,* 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]), the trial court clearly had jurisdiction to award Shirley her share of the benefits. ▮ The Supreme Court's later decision in *McCarty* v. *McCarty, supra,* 453 U.S. 210, as we shall explain, did not divest state courts of jurisdiction previously asserted, nor render earlier state actions void.

In *McCarty, supra,* the court held federal law precludes dividing military retired pay under state community property laws because to do so threatened grave harm to clear and substantial federal interests, potentially frustrated congressional objectives, and interfered with a legitimate exercise of the federal government's power. The Supreme Court did not hold Congress expressly prohibited the states from exercising jurisdiction over military retired pay (see *Kalb* v. *Feuerstein, supra,* 308 U.S. 433), but judicially declared the operation of state law so inconsistent with federal law was "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Hines* v. *Davidowitz, supra,* 312 U.S. 52, 67 [85 L.Ed. 581, 587].) Thus, to the extent community property disposition of military retirement pay was precluded, it was not because Congress "positively required" so, but because state law was "superseded" or "overruled" by federal law through judicial interpretation and statutory construction. (See *Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 525-526 [51 L.Ed.2d 604, 614, 97 S.Ct. 1305].)

Significantly, the Supreme Court in *McCarty* did not state its intent to invalidate or otherwise render unenforceable, prior valid and subsisting

state court judgments. Consequently, courts have consistently refused to apply *McCarty* retroactively to judgments which were final before *McCarty* was decided. (See, e.g., *In re Marriage of Sheldon, supra,* 124 Cal.App.3d 371, app. dism. 456 U.S. 941 [72 L.Ed.2d 462, 102 S.Ct. 2002]; *In re Marriage of Fellers* (1981) 125 Cal.App.3d 254 [178 Cal.Rptr. 35]; *In re Marriage of Parks* (1982) 138 Cal.App.3d 346 [188 Cal.Rptr. 26].) Moreover, federal review of the argument that *McCarty* rendered earlier state court judgments void for lack of subject matter jurisdiction was foreclosed when the United States Supreme Court dismissed the appeal of *In re Marriage of Sheldon* for want of a substantial federal question. (*Sheldon* v. *Sheldon* (1982) 456 U.S. 941 [72 L.Ed.2d 462, 102 S.Ct. 2002]; *Armstrong* v. *Armstrong* (9th Cir. 1983) 696 F.2d 1237, 1238.) We therefore reject Billy's claim that federal preemption voids the judgment awarding Shirley a portion of his military retirement benefits as her community property.

THE *McCARTY* DECISION DOES NOT PERMIT COLLATERAL ATTACK ON STATE COURT JUDGMENTS WHICH BECAME FINAL BEFORE ITS EFFECTIVE DATE

■    A final judgment by a court of competent jurisdiction bears a presumption of validity, and is not subject to collateral attack. (*Kalb* v. *Feuerstein, supra,* 308 U.S. 433, 438 [84 L.Ed. 370, 374].)    ■    Once a court has jurisdiction of both the parties and the subject matter, as the superior court did here, the judgment binds the parties even though the court may have proceeded irregularly or erred in applying the law to the case before it. A judgment based on an erroneous view of the law does not render it void. (See *Federated Department Stores* v. *Moitie* (1981) 452 U.S. 394 [69 L.Ed.2d 103, 101 S.Ct. 2424].)

■    Under the principles of res judicata, a final judgment on the merits precludes Billy from relitigating issues that were or could have been raised in that action. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Here, the judgment of dissolution was not appealed and is long since final. Billy cannot now collaterally raise issues he could have directly litigated in that action. (*Reed* v. *Allen* (1932) 286 U.S. 191, 201 [76 L.Ed. 1054, 1058, 52 S.Ct. 532, 81 A.L.R. 703]; *Federated Department Stores* v. *Moitie, supra,* 452 U.S. 394, at pp. 398-399 [69 L.Ed.2d 103, at pp. 108-109].) Moreover, public policy demands finality of litigation in the area of family law. "To permit such adjudications which have long since become final to be reopened so as to award military retirement pay to the husband as his separate property would flaunt the rule of res judicata, upset settled property distributions on which parties have

planned their lives, and unsettle judgments entered as long as 40 years ago. [Citation.]" (*In re Marriage of Fellers, supra,* 125 Cal.App.3d 254, 257.)

## THE FEDERAL ANTI-ASSIGNMENT STATUTE DOES NOT AFFECT THE VALIDITY OF COMMUNITY PROPERTY DISTRIBUTIONS

■  Billy further contends his 1975 state court judgment was void and unenforceable when rendered by virtue of the military pay anti-assignment statute (37 U.S.C. § 701(a) and (c)) because state courts lack subject matter jurisdiction to divide military retired pay under community property law. Section 701(a) allows a commissioned officer of the Army or Air Force to transfer or assign his pay account "when due and payable." Subdivision (c) provides an enlisted member of the Army or Air Force may not assign his pay, and if he does so, the assignment is void. However, these anti-assignment provisions are irrelevant to this case. Here, the applicable state law characterized the military retirement credits which are already earned as community property, 45 percent of which was "owned," for purposes of a 1975 division, by Shirley. There is no assignment to Shirley of Billy's interest, merely a setting aside of her present interest, payment of which is to be made in future installments.

■  Billy also contends the FUSFSPA, effective February 1, 1983, cannot be constitutionally applied to cases decided before June 25, 1981.[3] Because our holding in this case is not based on a retroactive application of FUSFSPA, we need not address this contention.

Upon application to the superior court, Shirley is entitled to reasonable attorney fees as well as costs incurred on appeal. (Civ. Code, § 4370, subd. (a).)

---

[3]*McCarty* was decided on June 26, 1981. FUSFSPA provides: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

The purpose of the provision was to "remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State and other laws in determining whether military retired or retainer pay should be divisible." The legislation was intended to "afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision." (Sen.Rep. No. 97-502, 2d Sess., reprinted in 1982 U.S. Code Cong. & Admin. News 1555, 1596, 1611.) Therefore, the legislation has no effect on Billy and Shirley's divorce decree.

Writ denied.

Wiener, Acting P. J., and Butler, J., concurred.