In re Billy Junior THOMAS, Debtor.

Billy Junior THOMAS, Plaintiff,

v.

Shirley M. LYLES, Defendant.

Bankruptcy No. 83–03429–M7.
Complaint No. C83–02342–M7.

United States Bankruptcy Court,
S.D. California.

Dec. 11, 1984.

28

Thomas Lockhart, El Cajon, Cal., for plaintiff.

Stephen C. Mitchell, San Diego, Cal., for defendant.

## MEMORANDUM OPINION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT

JAMES W. MEYERS, Bankruptcy Judge.

### I

On July 19, 1983, the Debtor, Billy Junior Thomas, filed this Chapter 7 petition. On July 29, 1983, the Clerk of this Court sent out a notice to all listed creditors that the bar date for the filing of complaints under Section 523(c) of the Bankruptcy Code ("Code") was October 17, 1983.

On August 17, 1983, the Debtor filed this complaint against his former spouse, Shirley M. Lyles, to determine the dischargeability, under Section 523(a)(5) of the Code, of certain arrearages that had accrued un-der the judgment of dissolution of marriage that had been filed by the state court on August 28, 1975. Ms. Lyles filed her answer on September 7, 1983, alleging that the Debtor had failed to remit her share of his military retirement pay. She claimed that his acts constituted fraud by a fiduciary, conversion and willful and malicious injury to her property.

On September 27, 1984, the Debtor filed a motion for summary judgment, which was heard before this Court on stipulated facts on October 23, 1984 and taken under submission. This Opinion is to announce this Court's decision on the motion.

### II

#### FACTS

On August 28, 1975, an interlocutory judgment of dissolution of the parties' marriage was filed in the San Diego Superior Court. Among the terms of this order was a directive that the Debtor remit forty-five (45) percent of his gross military retirement pay to the defendant as her community property interest in this pay. This provision was not in the nature of spousal support. On July 19, 1983, the date the Debtor filed his Chapter 7 petition, there was an arrears of $8,526.09 owed to the defendant.[1]

### III

#### DISCUSSION

The Debtor's motion is predicated on both procedural and substantive grounds. On the procedural level, the Debtor claims that the defendant has failed to comply with Bankruptcy Rule 4007(c), as she has not filed a timely complaint in pursuing her claims of non-dischargeability under Sections 523(a)(4) and (6). Further, the Debtor argues that the allegations presented by the defendant are defective in that they are not specific enough to raise a question of fraud. On substantive grounds, the Debt-

---

1. This statement of facts is taken from the stipulation of facts filed by the parties on September 27, 1984.

or denies that the facts could support a judgment that he committed fraud while acting as a fiduciary or that his actions constituted conversion or willful and malicious injury to her property.

## A. PROCEDURAL ISSUES

### 1. *Compliance with Bankruptcy Rule 4007(c)*

In his first challenge to the defendant's case, the Debtor notes that she is seeking a judgment excepting his obligation owed to her from the discharge, under paragraphs (4) and (6) of Section 523(a) of the Code, and that Section 523(c) requires that the Court make a determination on such questions on the "request of the creditor". 11 U.S.C. Section 523(c). *See In re Mendoza*, 16 B.R. 990, 992 (Bkrtcy.S.Cal.1982). Under Bankruptcy Rule 4007(c), complaints filed pursuant to Section 523(c) of the Code must be filed prior to the bar date, which in this case was set as October 17, 1983. *See In re Norfolk*, 29 B.R. 377, 379 (Bkrtcy.W. N.Y.1983). The Debtor further notes that the defendant has never filed such a complaint. Instead, he filed the complaint at issue here under Bankruptcy Rule 4007(a), for the sole purpose of testing whether Section 523(a)(5) of the Code, dealing with the dischargeability of spousal support obligations, would except this debt from the discharge. Since his complaint raises issues found in a different paragraph of Section 523(a), then he would have this Court declare that the defendant has failed to satisfy the requirements of Section 523(c) and Bankruptcy Rule 4007(c) and refuse to consider her contentions.

The flaw in the Debtor's analysis is that the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and instead forward the principle that the purpose of pleading is to aid in gaining a decision on the merits. *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In accord with the guidance provided by the Rules, the Seventh Circuit Court of Appeals confronted this same question raised under Bankruptcy Rule 409(a)(2), the predecessor to Bankruptcy Rule 4007(c), and concluded that:

"... to hold that where another has already commenced an adversary proceeding on the debt the creditor must still commence another and parallel proceeding on what amounts to a compulsory counterclaim would make the language of the rules promote the very waste, duplication, and diseconomy the rules were designed to avoid. That the *affirmative relief prayed for in the answer* was not specifically denominated a counterclaim is not significant where, as here, the pleading is clear that such relief is sought. (emphasis added).

*In re Jones*, 560 F.2d 775, 779 (7th Cir. 1977); *See Wong v. Bacon*, 445 F.Supp. 1177, 1184 (N.Cal.1977); Federal Rule of Civil Procedure 8(c) and Bankruptcy Rule 7008(a). Given that the Debtor had already placed the dischargeability of his obligation to his former wife at issue, no useful purpose can be served by requiring her to file yet another complaint concerning this debt. Therefore, this Court adopts the well reasoned decision found in *Jones* and in regard to the defendant's prayers denominated as affirmative defenses, declines to order them stricken.

### 2. *Compliance With Particularity Requirement of Rule 9(b), Fed.Rules Civ.Proc.*

Next the Debtor suggests that the defendant's claims are not properly presented in that they are not stated with the minimum factual representations necessary to support an allegation of fraud.

While this issue is raised in the context of a Motion for Summary Judgment filed under Rule 56, Fed.Rules Civ.Proc., made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7056, the Court treats this as a Motion For A More Definite Statement. *See* Rules 12(e), Fed. Rules Civ.Proc.; Bankruptcy Rule 7012.

In this context the Court notes that the Federal Rules of Civil Procedure do not

generally require a claimant to set out in detail the facts upon which he bases his claim. *Conley v. Gibson, supra,* 355 U.S. at 47, 78 S.Ct. at 102. All the Rules require is a short and plain statement of the claims that will give the opposing party fair notice of the nature of the claim and the grounds upon which it rests. *Id.;* Rule 8(a)(2), Fed.Rules Civ.Proc.; Bankruptcy Rule 7008(a). This is in accord with the "modern" philosophy concerning pleadings in that they do little more than indicate generally the type of litigation that is involved. *Security and Exchange Comm'n v. Timetrust, Inc.,* 28 F.Supp. 34, 41 (N.Cal.1939).

■■■ However, here the defendant is alleging fraud under Section 523(a)(4) of the Code. The Debtor is correct that such averments must be stated with particularity under Rule 9(b), Fed.Rules Civ.Proc. *See* Bankruptcy Rule 7009. But even where fraud is alleged, all that is required is a concise statement of the circumstances alleged to constitute the fraud, with no need to provide elaborate detail. *See* 2A *Moore's Federal Practice* 12.18, p. 2394–95 (2d ed. 1984). Further, it is only necessary to allege ultimate facts and not evidence. *In re Tucker Corporation,* 256 F.2d 808, 811 (7th Cir.1958).

■■■ With these standards in mind we can now review the statement of the defendant's case. Seldom has a more straightforward and simple case been presented to any Court. The parties divorced in 1975 with the state court awarding the defendant a portion of the Debtor's military retirement pension. The Debtor paid over to the defendant her share of these payments from time to time. That the Debtor has not enthusiastically fulfilled his responsibility is clear. *See In re Marriage of Thomas,* 156 Cal.App.3d 631, 203 Cal.Rptr. 58 (1984). Now the Debtor seeks to discharge his liability for arrearages on these payments through his bankruptcy case. Part of the defendant's case is simply that the Debtor has committed fraud under Section 523(a)(4) of the Code by failing to remit these payments, contrary to

state court orders. The Debtor is certainly fully advised as to the nature and extent of these charges. Thus, the Debtor's motion must be denied.

This decision is in full compliance with the requirements of the Rules, especially when one recognizes the liberality accorded claims of fraud in bankruptcy proceedings. *See In re Germain,* 144 F.Supp. 678, 683 (S.Cal.1956); *In re Tucker Corporation, supra,* 256 F.2d at 811. Further, it certainly forwards the directive of Rule 8(f), Fed. Rules Civ.Proc., that all pleadings shall be construed to do substantial justice.

## B. SUBSTANTIVE ISSUES

### 1. *Nature of the Defendant's Interest*

■■■ In commencing our survey into this area, we are advised that the whole subject of domestic relations of husband and wife belongs to the laws of the various states. *See McCarty v. McCarty,* 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981). In California the division of community property is governed by provisions found in The Family Law Act. Cal. Civ.Code Section 4800, *et seq.; Jones v. Tyson,* 518 F.2d 678, 681 (9th Cir.1975). Upon the dissolution of a marriage, each spouse has an equal and absolute right to a half interest in all community property, while each spouse retains his or her separate property. *McCarty v. McCarty, supra,* 453 U.S. at 210, 101 S.Ct. at 2728. A California trial court has discretion to fashion an order dividing community assets in any way which does not contravene the statute. *Matter of Paderewski,* 564 F.2d 1353, 1357 (9th Cir.1977).

■■■ Retirement benefits earned by a spouse during a marriage have been declared as community property, subject to equal division upon the dissolution of the marriage, whether the benefits are vested or nonvested, matured or immature. *In re Marriage of Gillmore,* 29 Cal.3d 418, 422, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). The typical way that this division is accomplished is for the court to award each spouse an appropriate portion of each pen-

sion payment as it is paid. *In re Marriage of Brown*, 15 Cal.3d 838, 848, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *In re Marriage of Williams*, 157 Cal.App.3d 1215, 1227, 203 Cal.Rptr. 909 (1984).[2]

The history of California's treatment of military retirement pensions has been a much rockier road than that for the treatment of pension rights generally. In 1941, the California Supreme Court declared that military retirement pensions are only an expectancy and therefore not subject to division as community property. *French v. French*, 17 Cal.2d 775, 778, 112 P.2d 235 (1941). *See Matter of Haynes*, 9 B.R. 418, 420 (N.Ind.1981), *aff'd*, 679 F.2d 718 (7th Cir.1982). The authority of *French* was thereafter confined to cases involving non-vested pension rights, with vested rights being routinely divided between the spouses. *See In re Marriage of Fithian*, 10 Cal.3d 592, 596, 111 Cal.Rptr. 369, 517 P.2d 449 (1974); *In re Karlin*, 24 Cal.App.3d 25, 30, 101 Cal.Rptr. 240 (1972). Finally, in 1976 *French* was overruled with a vengeance. *In re Marriage of Brown, supra*, 15 Cal.3d at 841, 851, 126 Cal.Rptr. 633, 544 P.2d 561; *Henn v. Henn*, 26 Cal.3d 323, 328, 161 Cal.Rptr. 502, 605 P.2d 10 (1980). The difficulty with the California Supreme Court's new assurance in this area was that these rulings, providing former spouses with an interest in military pension rights, were unconstitutional, being in contravention of the Supremacy Clause of the Constitution of the United States, since Congress had not authorized the states to deal with such rights. *McCarty v. McCarty, supra*, 453 U.S. at 223, 101 S.Ct. at 2736.

■ In striking down California's attempts to deal with military pension rights, the High Court did recognize that Congress could decide to afford more protection to former spouses by allowing the states to include such pension rights as part of the division of community property. 453 U.S. at 235–36, 101 S.Ct. at 2742–43. Congress was not long in responding to the Supreme Court's invitation. In September of 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act ("FUSFS-PA"), which permits the states to treat retirement pay as either the property of the member of the armed forces or as property of the member and his spouse, under certain restrictions. *See Armstrong v. Armstrong*, 696 F.2d 1237, 1238 n. 1 (9th Cir.1983); 10 U.S.C. Section 1408. The effect of this new Act is to lift the preemption on state action, abrogate the authority of *McCarty* and allow the states to deal with military pensions in the manner in which they choose, so long as they act within the limitations imposed by FUSFS-PA. *In re Marriage of Hopkins*, 142 Cal. App.3d 350, 356, 191 Cal.Rptr. 70 (1983); *In re Marriage of Ankenman*, 142 Cal.App.3d 833, 837, 191 Cal.Rptr. 292 (1983); *In re Marriage of Sarles*, 143 Cal.App.3d 24, 25, 29, 191 Cal.Rptr. 514 (1983).

In this new era, the California courts have reverted to the pre-*McCarty* policy of granting the spouse a fair share of military pensions if necessary to achieve an equitable division of the community assets. *See In re Marriage of Buikema*, 139 Cal. App.3d 689, 691, 188 Cal.Rptr. 856 (1983); *In re Marriage of Frederick*, 141 Cal. App.3d 876, 879, 190 Cal.Rptr. 588 (1983).[3] Thus, in this case, the defendant has a 45% interest in the Debtor's retirement pay as part of her separate property. *See In re Marriage of Fithian, supra*, 10 Cal.3d at 600, 111 Cal.Rptr. 369, 517 P.2d 449; *In re Marriage of Thomas, supra*, 156 Cal. App.3d at 639, 203 Cal.Rptr. 58 (her "present interest"). *Contra, Matter of Story*, 36 B.R. 546, 547 (Bkrtcy.M.Fla. 1983); *but see, Boyd v. Robinson*, 741 F.2d

---

2. The trial court may even maintain continuing jurisdiction over the payments to supervise the division. *See McCarty v. McCarty, supra*, 453 U.S. at 217 n. 8, 101 S.Ct. at 2733 n. 8.

3. As noted by the state appellate court in the Debtor's case, the California courts have consist-

ently refused to apply *McCarty* retroactively to judgments, such as the instant case, where the judgment had become final prior to June 26, 1981. *In re Marriage of Thomas, supra*, 156 Cal.App.3d at 638, 203 Cal.Rptr. 58.

1112, 1114–15 (8th Cir.1984). Being her separate property, an interest which this Court has no power to modify in this bankruptcy case, then the Debtor's continuing responsibility to remit to the defendant her specified share of any post-petition receipts of retirement pay survives the entry of the discharge order. This neither party disputes. However, whether the Debtor's failure to pay over to the defendant her share in certain pre-petition payments is likewise exempt from the discharge order is another, more complex, question.

### 2. Claim of Fraud or Defalcation While Acting as a Fiduciary Under 11 U.S.C. Section 532(a)(4)

■■■■■ The defendant argues that the Debtor acted in the role of a fiduciary, caring for her share of the retirement pay he received and his failure to disburse this $8,526.09 to her constitutes a fraud or defalcation under Section 523(a)(4) of the Code.[4]

As the Debtor points out, the major deficiency that the defendant has in this aspect of her case is that the fiduciary capacity requirement has consistently been limited to technical or express trust relationships and not to trusts which are impressed by operation of law. *In re Cooper,* 30 B.R. 484, 489 (9th Cir.B.A.P.1982). *See In re Pedrazzini,* 644 F.2d 756, 758 (9th Cir. 1981); *Matter of Tressler,* 41 B.R. 779, 781 (Bkrtcy.Del.1984).

■■■■ The question then is whether a debtor has a technical or express trust to take care of his former spouse's share of his pension receipts and scrupulously remit in a timely fashion. In a leading case in this field, our distinguished colleague Judge Ross M. Pyle confronted a similar argument and found it wanting, for a judgment of dissolution simply does not create a fiduciary relationship as required by Section 523(a)(4) of the Code. *In re Anderson,* 21 B.R. 335, 337 (Bkrtcy.S.Cal.1982).

*See In re Leo,* 20 C.B.C. 780, 783–84 (C.Cal. 1979) (Act case). *But see In re Duttenhofer,* 12 B.R. 926 (Bkrtcy.C.Cal.1981); *In re Elrod,* 42 B.R. 468, 472 (Tenn.1984).

Given that the Debtor here did not occupy a position of special trust constituting a fiduciary relationship, then the Debtor's motion for summary judgment is granted as to the allegations invoking Section 523(a)(4) of the Code.

### 3. Claim of Conversion of Property Under 11 U.S.C. Section 523(a)(6)

The defendant argues that the Debtor's failure to turn over her share of certain pre-petition receipts of retirement pay constitutes a conversion of her property and is therefore a willful and malicious injury to her property under Section 523(a)(6) of the Code.

There is some question whether conversion is even included as part of Section 523(a)(6) of the Code. *See Matter of Banasiak,* 8 B.R. 171, 173 (Bkrtcy.M.Fla. 1981). However, the better reasoned cases follow the legislative history which makes it clear that Congress intended that the phrase "willful and malicious injury" found in Section 523(a)(6) of the Code would cover a willful and malicious conversion. 124 Cong.Rec. H11,095–96 (Sept. 28, 1978); S17,412–13, (Oct. 6, 1978). *See In re Pommerer,* 10 B.R. 935, 940 (Bkrtcy.Minn. 1981); *Matter of Graham,* 7 B.R. 5, 7 (Bkrtcy.Nev.1980).

■■■■ Conversion means the wrongful assumption of dominion over personal property by one person to the exclusion of possession by the owner and in repudiation of the owner's rights. *In re Pommerer, supra,* 10 B.R. at 940. But the defendant must prove more than just a technical conversion, as the statute requires a showing of a willful act done deliberately and inten-

---

**4.** In pursuing these claims, the defendant has the burden of showing that the debt in question here is exempted from the discharge; *In re Thornton,* 544 F.2d 1005, 1006 (9th Cir.1976); and exceptions to discharge should be limited to those clearly expressed in the statute. *Matter of Angelle,* 610 F.2d 1335, 1339 (5th Cir.1980).

tionally.[5] *See In re Davis,* 11 B.R. 156, 158 (Bkrtcy.Vt.1980). The Debtor's actions here, in failing to forward the defendant's share of the retirement pay, even when under a direct court order to do so, appears to be a classical case of a deliberate and intentional conversion. *See In re Leo, supra,* 20 C.B.C. at 786 (Act case); *In re Dey,* 31 B.R. 567, 568–89 (Bkrtcy.W.N.Y.1983). To the extent the Debtor can show he formed a good faith belief he no longer had to pay over these funds during the *McCarty* era, then these missed payments may not be part of his conversion. *See In re Cooper, supra,* 30 B.R. at 490.[6]

In reaching this decision, the Court is well aware that property settlement obligations are generally declared to be dischargeable in bankruptcy. *See Goggans v. Osborn,* 237 F.2d 186, 189 (9th Cir.1956); *In re Pody,* 42 B.R. 570, 573 (Bkrtcy.N.Ala. 1984). That is to distinguish such cases from those involving support obligations which are not discharged under the clear language of Section 523(a)(5) of the Code. *See Shaver v. Shaver,* 736 F.2d 1314, 1316–17 (9th Cir.1984). But nothing in these nonsupport cases should be misconstrued as to bar a provision in a property settlement agreement from being declared excepted from the discharge under another provision of Section 523 of the Code, where such an independent basis can be shown to exist. *See In re Dey, supra,* 31 B.R. at 568–69.

■ Where a debtor is directed to pay a sum certain to a former spouse, out of his separate property, in order to equalize the division of community property, the debt may be discharged just like any other unsecured obligation without special status. *See Fleitas v. Richardson,* 147 U.S. 550, 555, 13 S.Ct. 495, 497, 37 L.Ed. 276 (1893).

In such cases a debtor-creditor relationship is established in the property settlement agreement itself and the debts created are not excepted from the discharge issued pursuant to Section 727 of the Code.

■ However, a different case is presented when, as here, we are dealing with the debtor's handling of property which has been awarded to another. No debt is created by a provision in a property settlement agreement in the apportionment of military retirements benefits, for the debtor incurs no personal financial obligation. If the government does not appropriate these funds, the defendant would have no claim against the Debtor. His responsibility is simply to forward her share when and if received. When he fails to relay these funds, *at that time* a debt is created, which would support a claim against the debtor personally. *See* 11 U.S.C. Section 101(4). Since this claim is created by an act of conversion, then it is excepted from the discharge under Section 523(a)(6) of the Code.

The Debtor well knew he was taking custody of funds which were partly the separate property of his former spouse. He was not at liberty to convert her share to his own use.[7]

## IV

### CONCLUSION

The Debtor's motion for summary judgment is granted as to the defendant's claims under 11 U.S.C. Section 523(a)(4) and denied in all other particulars. The defendant will have 14 days from the entry of this Opinion to lodge a proposed Order reflecting this ruling.

---

5. This requirement, of proving an intentional wrong, places a heavier burden on the defendant than she faced under Section 523(a)(4) dealing with acts committed by a fiduciary. *See In re Gonzales,* 22 B.R. 58, 59 (9th Cir.B.A.P.1982).

6. Obviously, as to any missed payments subsequent to his Superior Court appearance on September 24, 1981, he could not have a reasonable good faith belief that his burden had been lifted.

7. This decision is in accord with those cases which have determined that a discharge in bankruptcy does not give the debtor the right to withhold specific property from its true owner. *Matter of Underwood,* 17 B.R. 417, 419 (W.Mo. 1981).