**In re Warren E. WOOD, Debtor.**

**Warren E. WOOD, Appellant,**

v.

**Jerrie L. (Wood) COFFER and Robert Deems, Appellees.**

**BAP No. SC 87–2026 RPAS.**

**Bankruptcy No. 86–05082 M7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 21, 1988.

Decided Dec. 16, 1988.

Law Offices of William C. Mathews, San Diego, Cal., for appellant.

Robert D. Deems, San Diego, Cal., for appellees.

Before RUSSELL, PERRIS and ASHLAND, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The Superior Court of California, San Diego County, awarded a portion of appellant/debtor's retirement pension to appellee, his former wife ("wife"), in a Judgement for Division of Community Property subsequent to their marriage dissolution. The percentage of the pension was fixed according to the standard formula for determining retirement benefits. Debtor took early retirement at age 53 but did not notify wife or anyone else. The Superior Court subsequently awarded approximately $12,000 in arrearages to wife due to debtor's failure to pay her a portion of the pension benefits he received from 1983 until 1986. Debtor filed a voluntary petition to avoid paying this debt. The bankruptcy court found this debt to be nondischargeable under section 523(a)(6) of the Bankruptcy Code. The appellant appeals this decision.

## FACTS

Warren E. Wood (debtor/appellant) and Jerrie L. (Wood) Coffer (appellee) were married for approximately 15 years. Throughout the marriage, Mr. Wood worked for the International Union of Operating Engineers and had money taken from his paycheck and paid towards retirement. On August 12, 1974, Mr. Wood filed for divorce and on November 11, 1974 he obtained an Interlocutory Judgement of Marriage Dissolution. This decree made no mention of Mr. Wood's retirement fund.

In 1976, Mrs. Coffer discovered that her former husband had an interest in the Operating Engineer's Pension Trust. She obtained the legal services of Robert D. Deems and instituted an action to have this property divided so that she might receive her community property interest in the pension benefits. On June 14, 1978, the Superior Court entered a judgement dividing the interest in Mr. Wood's pension plan.

In January of 1983, Mr. Wood retired from the Operating Engineers at age 53 due to emphyszema. The normal retirement age for his line of work is approximately 65 years of age. Mr. Wood went to Pasadena, California, the location of the pension trust, discussed available pension plans, selected one to his liking, and was told the amount of pension he would receive. No mention was made of his former wife in the discussions, and Mr. Wood did not notify her, her attorney or anyone else of his early retirement. Mr. Wood knew that his former wife was entitled to a share of his retirement pension, but he did nothing to find out the actual amount she was to receive or when she was to receive it.

From January 1, 1983 through February 1, 1986 Mr. Wood received and collected the entire sum of the pension paid during that period of time. He retained his former wife's share of the benefits and paid her nothing. In late January, 1986, Mrs. Coffer learned of her former husband's early retirement. On July 11, 1986, her attorney received a letter from the Operating Engineers Pension Trust Fund, dated July 9, 1986, indicating the payment of retirement benefits to Mr. Wood. Such payments had commenced upon his retirement in 1983.

Mrs. Coffer took action to have one-half of the retirement funds withheld until the Family Law Court could dispose of those funds. On August 6, 1986, the Superior Court made a final disposition of the funds, fixing the arrearages Mr. Wood owed to Mrs. Coffer at approximately $12,000. The Court also ordered Mr. Wood to pay Robert Deems a contribution of $600 towards Mrs. Coffer's attorney's fees based on Mrs. Coffer's need for support. To date, the Oper-

ating Engineers Pension Trust has paid Mrs. Coffer the sum of $1,176.00.

On August 11, 1986, Mr. Wood filed a Chapter 7 case, invoking the automatic stay and preventing the filing of the above mentioned Superior Court Order. Mr. Wood filed his petition solely to discharge this debt. On October 17, 1986, Mrs. Coffer and her attorney Robert Deems filed a complaint to determine their debts nondischargeable. Mr. Wood filed his answer on October 24, 1986.

The matter was heard on September 2, 1987. After hearing Mr. Wood's testimony, the court concluded that the debtor knew he owed his former wife a portion of the retirement benefits he was receiving and that he did not remit any funds nor did he attempt to find out how much he owed her. Specifically, the judge stated that Mr. Wood's failure to remit or to ask the court to declare the portion that was in fact his former wife's separate property constituted "conversion" under the Bankruptcy Code. On September 23, 1987, the court ruled, pursuant to section 523(a)(6) of the Bankruptcy Code, that the arrearage debt was nondischargeable and ordered Mr. Wood to pay his former wife $9,345.43 as of July 10, 1987. The court declared the $600.00 debt owed to Mr. Deems dischargeable. Mr. Wood has timely filed this appeal.

## ISSUE

Whether Mr. Wood's failure to notify his former wife of his early retirement and the retention and conversion of her share of the pension benefits constituted a "willful and malicious" injury to Mrs. Coffer pursuant to 11 U.S.C. section 523(a)(6) to cause this debt to be nondischargeable. Creditor does not contest on appeal the dischargeability of its $600.00 debt.

## APPLICABLE STATUTE

11 U.S.C. section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact will not be reversed unless clearly erroneous. *In re Harten*, 78 B.R. 252, 253 (9th Cir. BAP 1987); *In re Wavelength, Inc.*, 61 B.R. 614, 619 (9th Cir. BAP 1986); *Bankruptcy Rule* 8013. The "clearly erroneous" standard requires the reviewing court to search the entire record and to reverse the lower court only if it is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). The Bankruptcy Appellate Panel will review a bankruptcy court's conclusions of law *de novo*. *Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## DISCUSSION

Debtor contends that his failure to notify his former wife that he had retired early due to emphyszema did not cause a "willful and malicious" injury to property to cause the debt to be nondischargeable pursuant to 11 U.S.C. section 523(a)(6). In particular, the debtor contends that as a matter of law the "technical conversion" of his former wife's rights to her share of the pension was not a "malicious act" within the meaning of the Code. We disagree, and we affirm the bankruptcy court's finding that the debtor's obligation to his former wife is nondischargeable under section 523(a)(6).

Debtor contends that there are two distinct schools of thought on the issue of what constitutes "willful and malicious" under section 523(a)(6). Both schools derive their origins from the landmark case of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The case *In re Tinkham*, 59 B.R. 209 (Bankr.D.N.H.1986) summarizes this dichotomy of approaches:

The term "willful and malicious injury" has been interpreted to mean a deliberate action in which the actor knows his ac-

tion will result in injury to another person or property. *United Bank of Southgate v. Nelson,* 35 B.R. 766, 776–777 (N.D.Ill.1983); *In re McCloud,* 7 B.R. 819, 825–826 (Bankr.M.D.Tenn.1980); *In re Scotella,* 18 B.R. 975, 977 (Bankr.N.D. Ill.1982); *Matter of Klix,* 23 B.R. 187, 189–190 (Bankr.E.D.Mich.1982); *In re Donny,* 19 B.R. 354, 359 (Bankr.W.D. Wis.1982); *Matter of Chambers,* 23 B.R. 206, 210 (Bankr.W.D.Wis.1982). A conflicting line of decisions appears to employ a less stringent standard of "reckless disregard" or "gross negligence" typically and factual circumstances in which morally reprehensible conduct is involved. See, e.g., *In re Jordan,* 47 B.R. 712, 716 (Bankr.N.D.Oh.1985); *In re Auvenshine,* 9 B.R. 772 (Bankr.W.D. Mich.1981); *In re Wooten,* 30 B.R. 357 (Bankr.N.D.Ala.1983); *In re Rines,* 18 B.R. 666 (Bankr.M.D.Ga.1982); *In re Thomas,* 47 B.R. 27, 33–34 (Bankr.S.D. Ca.1984).

*Tinkham,* 59 B.R. at 214.

This Circuit has addressed the "willful and malicious" language of section 523(a)(6). The Court in *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986) discussed the two indicated schools of thought and concluded that "when a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *Cecchini,* 780 F.2d at 1443. "The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception." *Cecchini,* 780 F.2d at 1443, *citing* 3 *Collier on Bankruptcy,* paragraph 523.-16(1) at 523–118 (15th ed. 1988). This construction is in accord with that of other circuits that have recently addressed this matter. *See, e.g., In re Franklin,* 726 F.2d 606, 610 (10th Cir.1984) (" 'willful and malicious' requires the intentional doing of any act which leads to injury."); *Matter of Quezada,* 718 F.2d 121, 123 (5th Cir.1983) ("willful means deliberate, a deliberate and

intentional act which necessarily leads to injury").

Additionally, the Ninth Circuit's approach is essentially the same as that set forth by the same bankruptcy judge who presided over the present case. In a similar scenario to that of the instant case, *In re Thomas,* 47 B.R. 27 (Bankr.S.D.Cal. 1984), involved the question of the dischargeability of military pension arrearages the debtor owed to his former wife. That court stated that "the debtor's responsibility is to forward her share if and when received." *Thomas,* 47 B.R. at 34. "The debtor's actions ... in failing to forward the [former wife's] share of the retirement pay ... appears to be a classical case of a deliberate and intentional conversion." *Id.* at 34. "Since this claim is created by an act of conversion, then it is exempted from the discharge under section 523(a)(6) of the Code." *Id.* Such statements aptly apply in the instant case.

Applying the Ninth Circuit test set forth in *Cecchini,* it is clear that the debtor's retention of his former wife's share of his retirement pension constituted a "willful and malicious" act that was intended to cause injury. It is quite obvious that the debtor intended to convert the money due his former wife. The bankruptcy court found that the debtor knew his former wife was entitled to receive a portion of this pension, and that his failure to remit or ask the court to declare the portion that was in fact his former wife's separate property constituted a "conversion", thereby making the obligation nondischargeable. Debtor's former wife obviously was harmed in that she did not receive the benefits to which she was entitled. "The debtor well knew that he was taking custody of funds which were partly the separate property of his former spouse. He was not at liberty to convert her share to his own use." *Thomas,* 47 B.R. at 34.

Debtor's conduct also constitutes a "willful and malicious" act under the more stringent approach which he urges us to adopt. The evidence is overwhelming to support such a finding. Debtor received the pension benefits deliberately without

regard as to whether it would cause injury or harm to his former wife. The court found that he intentionally kept the money, fully knowing that his former wife was entitled to part of the benefits. He did not notify anyone that he had retired; in particular, not the court, his former wife nor her attorney. Such facts clearly indicate that the debtor intended to keep the money for himself, knowing that such would injure and harm his former wife. Therefore, under either test, the bankruptcy court was correct in finding the debtor's conduct to be "willful and malicious" and in finding this debt nondischargeable under section 523(a)(6).

■ "Under Federal Rule of Appellate Procedure 38, if we determine that an appeal is frivolous, then damages and single or double costs may be awarded to the appellee." *In re Burkhart*, 84 B.R. 658, 661 (9th Cir. BAP 1988). Cases interpreting Rule 38 indicate that a frivolous appeal is one where the result is obvious or the arguments are wholly without merit. *Matter of Hawaii Corp.*, 796 F.2d 1139, 1144 (9th Cir.1986); *In re Peoro*, 793 F.2d 1048, 1052 (9th Cir.1986); *Burkhart*, 84 B.R. at 661.

Based on the presented facts, we find this appeal to be frivolous. Debtor has merely reiterated the facts he argued before the bankruptcy court. He urges us to resolve a dichotomy of interpretations of what constitutes "willful and malicious" under section 523(a)(6). This dispute, however, has already been resolved in this Circuit in *In re Cecchini*. Finally, the facts clearly indicate that the debtor intended to keep all the pension benefits for himself and that he intended to injure his former wife. For these reasons, we impose sanctions on the debtor for pursuing an appeal without merit.

## CONCLUSION

We affirm the trial court and hold that the appeal is frivolous. This court has the power to grant attorney's fees and expenses reasonably incurred in defending against an unreasonable or frivolous appeal pursuant to Federal Rules of Appellate Procedure 38. *In re Omoto*, 85 B.R. 98 (9th Cir. BAP 1988); *In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir.1987). This panel requests counsel for debtor to submit a tabulation and calculation of fees and costs incurred in defending this appeal.