In re Paul P. LAURICELLA, Debtor.

CALIFORNIA STATE BANK, Appellant,

v.

Paul P. LAURICELLA, Appellee.

BAP No. CC–89–1155–PVMo.
Bankruptcy No. LA 87–24286 LHF.
Adv. No. LA 88–0470 LHF.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 1989.

Decided Sept. 22, 1989.

Daniel J. Doonan, McAlpin, Doonan & Seese, Covina, Cal., for appellant.

Ralph L. Sims, Solton, Jacobs, Weiss, Castagno & Sims, Downey, Cal., for appellee.

Before PERRIS, VOLINN and MOOREMAN, JJ.

## OPINION

PERRIS, Bankruptcy Judge.

Appellant, California State Bank ("CSB"), filed an adversary proceeding alleging that a debt owed it by the debtor as a result of a "kiting scheme" engaged in by another officer of the debtor's corporation was nondischargeable. CSB files this timely appeal from an order determining that the debt is dischargeable. We affirm.

## FACTS

Debtor/appellee, Paul P. Lauricella ("debtor"), and James and Janice Chadick were founders, shareholders and officers of Advanced Leaf Springs, Inc. ("Advanced"), a corporation that filed a Chapter 11 petition on April 16, 1986. Prior to August of 1985, Advanced established a merchant account with CSB. Advanced used the account as a general checking account and to deposit credit card sales slips created through the sale of their products by credit card. The terms of the account prohibited the submission of false sales transactions by depositing credit card sales slips.

Mr. Chadick had five personal credit card accounts that he used in a "kiting" scheme which created the debt at issue. In August and September of 1985, Mr. Chadick executed credit card sales slips on his personal credit card accounts which falsely reflected sales of Advanced products. Mr. Chadick then deposited the sales slips in the merchant account at CSB, receiving immediate credit to Advanced's account of the amounts reflected in the sales slips. Contemporaneous with the deposit of the sales slips into the merchant account, Mr. and Mrs. Chadick caused checks to be drawn on the merchant account to the credit card

companies upon which the sales slips had been charged. The debtor signed some of these checks. The kiting scheme artificially inflated the cash balance of the account.

The bankruptcy court found that the kiting scheme was not part of Advanced's ordinary course of business and that there was insufficient evidence to establish that Advanced was intended to or did benefit from the scheme. The bankruptcy court further found that there was insufficient evidence to establish that Advanced was experiencing significant financial distress in August of 1985.

Although the debtor signed some of the checks, there is no evidence that he participated in or had knowledge of the scheme. The evidence indicates and the bankruptcy court found that during this time period the debtor was unaware of Advanced's day to day financial affairs because of his alcohol abuse and other personal problems.

Upon discovery of the kiting scheme, CSB arranged a meeting with the Chadicks and the debtor. At the meeting, the Chadicks admitted that the scheme artificially inflated the balance in the amount of approximately $50,000. Although the debtor was present at the meeting, he did not actively participate in it. Debtor did not visibly react when the Chadicks admitted their participation in the scheme. Debtor did, however, deny knowledge of the scheme.

At a second meeting between CSB, the Chadicks and the debtor, Advanced executed a note, guaranteed by the Chadicks and the debtor, in the sum of $50,000 to cover any loss incurred by CSB as a result of the scheme.[1] The debtor testified that he understood that the note was to repay overdrafts in the merchant account. When

CSB determined the final total of the overdrafts created by the scheme to be $44,342.06, Advanced executed a note in favor of CSB in that amount. The Chadicks and the debtor guaranteed repayment of the note. No payments have been made upon the note.

On January 27, 1988, the debtor filed a voluntary Chapter 7 bankruptcy petition. Soon thereafter, CSB filed a complaint to determine the dischargeability of a debt, alleging that the debt created by the scheme was excepted from discharge under 11 U.S.C. §§ 523(a)(2) and (a)(4).[2] After trial, the bankruptcy court concluded that CSB failed to meet its burden of proving that the wrongful acts of Mr. Chadick could properly be imputed to the debtor and that the debtor did not personally engage in any willful or malicious conduct causing injury to CSB. CSB appeals the order declaring the debt discharged.

## ISSUES

1. Whether the bankruptcy court committed reversible error in determining that the debt owed CSB by the debtor was dischargeable under section 523(a)(6).

2. Whether the bankruptcy court erred in relying upon evidence of debtor's alcohol abuse when neither the pleadings nor the pre-trial order specifically mention such alcohol abuse.

3. Whether CSB should be sanctioned on appeal.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact will not be reversed unless clearly erroneous. *In re Wood,* 96 B.R. 993, 995 (9th Cir. BAP 1988); Bankruptcy Rule 8013. Con-

---

1. When the credit card companies did not pay many of the false credit card sales receipts, the merchant account became overdrawn. Because of the overdrawn status of the account, CSB did not honor many checks written on the account, including some of those written to the credit card companies on account of the false credit card sales receipts. This created a situation where checks for legitimate payables were being dishonored as well. To resolve this situation, and to more rapidly determine the amount by which the account had been artificially inflated,

the bank agreed to honor the checks written on the account. In return, Advanced agreed to execute the note.

2. Although neither the pleadings nor the pre-trial order specifically referred to section 523(a)(6), the arguments of the parties on appeal and the findings and conclusions of the bankruptcy court indicate that the proceeding was decided on the basis of section 523(a)(6).

clusions of law are subject to *de novo* review. *Wood*, 96 B.R. at 995.

## DISCUSSION

1. *Whether the bankruptcy court committed reversible error in determining that the debt owed CSB by the debtor was dischargeable under section 523(a)(6).*

■ 11 U.S.C. § 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) sets forth the following standard for determining the existence of a willful and malicious injury under section 523(a)(6):

> When a wrongful act ... done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure.

The burden of proof is on the creditor to establish that the conduct in question is willful and malicious under section 523(a)(6). *E.g., In re Irvin*, 31 B.R. 251 (Bankr.D.Colo.1983).

In this case, it is not disputed that the conduct of James Chadick was willful and malicious. The dispute on appeal concerns whether the Chadicks' conduct can be imputed to the debtor and, if not, whether the debtor himself engaged in conduct sufficiently culpable to constitute a willful and malicious injury under section 523(a)(6).

a. *Imputation of Chadicks' conduct.*

■ In *Cecchini*, 780 F.2d at 1444, the court applied agency principles to determine that a partners' wrongful conduct could be imputed to a debtor for purposes of section 523(a)(6) when the partner was acting on behalf of the partnership in the ordinary course of business and the debtor shared in the benefits of the wrongful conduct.[3] In concluding that the wrongful conduct of James Chadick was not properly imputed to the debtor, the bankruptcy court found that the kiting scheme was not part of the ordinary course of business of Advanced and that there was insufficient evidence to establish that Advanced was intended to or did benefit from the wrongful conduct of James Chadick.

As the bankruptcy court determined, there is virtually no evidence in the record as to who received the ultimate benefit of the kiting scheme. It is true that the kiting scheme resulted in an inflated balance in Advanced's merchant account but there is no showing that this inflated balance, by itself, was a benefit to Advanced. The beneficiary of the kiting scheme would be the entity who received payment from this inflated balance or for whose benefit payment from the inflated balance was made. Because there is no evidence indicating whether the inflated balance was used to pay corporate liabilities or used by the Chadicks for personal purposes, the bankruptcy court did not commit clear error in finding insufficient evidence of benefit to the corporation.

Similarly, although the bankruptcy court did not directly address this issue, it appears that the debtor did not benefit from the kiting scheme. Debtor testified that he received no money for his own use from the kiting scheme. The fact that debtor signed the notes and the personal guarantee that purported to cover the loss suffered by CSB does not prove that he benefitted from the transaction. Debtor testified that he signed the note because he thought it was necessary to cover overdrafts and to keep the business going, not because he thought the note would repay losses suffered or benefits gained through the kiting scheme. Debtor's explanation of the note and his testimony that he did not benefit outweighs any implication of admission of benefit arising from the notes.

---

**3.** In *In re Lansford*, 822 F.2d 902, 904–905 (9th Cir.1987) the Ninth Circuit indicated in dicta that *Cecchini's* standard for imputing liability under agency principles may be overly broad in light of the Code's fresh start purposes and decisions of other circuits refusing to apply agency principles in the dischargeability context absent some culpability on the part of the debtor. Because we determine that the bankruptcy court did not commit clear error under the broad agency standard of *Cecchini*, we need not determine whether the broad standard for imputing liability should be limited, as *Lansford* suggests.

As to the ordinary course of business finding, CSB essentially contends that the fact that Mr. Chadick engaged in the scheme while he was an officer and director of the corporation and used a corporate account, which was opened in the ordinary course of the corporation's business, to further the scheme indicates that the scheme was in the ordinary course of Advanced's business. Although Mr. Chadick did act in such a manner, in the absence of evidence that the scheme served some corporate purpose or was the type of conduct commonly engaged in by the corporation, the bankruptcy court did not commit clear error in failing to find from this conduct that the scheme was in the ordinary course of Advanced's business.

Because there was virtually no evidence that Advanced benefitted from the kiting scheme, that the scheme occurred in the ordinary course of Advanced's business, or that debtor benefitted from the kiting scheme, the bankruptcy court correctly determined that the wrongful conduct of James Chadick was not properly imputed to the debtor.

### b. *The debtor's culpability.*

Having determined that James Chadick's misconduct was not properly imputed to the debtor, the next question is whether the debtor had sufficient culpability in his own right to support nondischargeability under section 523(a)(6).

The debtor's testimony indicates, and the bankruptcy court found that although the debtor signed many of the checks to the credit companies, the debtor had no knowledge of the facts underlying the kiting scheme. The bankruptcy court found that when debtor signed the checks he was incapacitated by alcohol and unaware of the day to day financial operations of Advanced and that debtor was not a knowing participant in the acts of Chadick. The bankruptcy court concluded that the debtor did not engage in any willful or malicious conduct causing injury to CSB.

CSB appears to make two arguments: (1) that the bankruptcy court committed clear error in determining that the debtor had no knowledge of the facts underlying the kit-

ing scheme; and (2) that the debtor's conduct in signing the checks while intoxicated was sufficiently culpable under section 523(a)(6).

■ Turning to the first argument, the testimony paints a picture of the debtor as a person who, because of alcohol abuse and personal problems, was oblivious to the day to day affairs of the business. The debtor relied on the Chadicks to conduct the business in his best interests and did not question the Chadicks when he was asked to take actions for the business, such as signing checks. The debtor did not know whether the transactions were legitimate, he simply did not comprehend and therefore did not inquire. To the extent CSB argues otherwise, this evidence supports the bankruptcy court's finding of a lack of knowledge.

■ As to whether the debtor's conduct in signing the checks while intoxicated was sufficiently culpable, we do not believe that the debtor's conduct meets the willful and malicious injury standard of *Cecchini*. Although the debtor's conduct in signing the checks was part of the kiting scheme, by itself this conduct was not wrongful, nor did it cause injury. The wrongful conduct which caused the injury was the kiting scheme engaged in by Chadick. Had the debtor known that the conduct was part of a fraudulent scheme, but nevertheless signed the checks, this conduct may constitute the intentional wrongful conduct required for section 523(a)(6). The fact that debtor may have violated a possible duty to inquire before signing the checks, may constitute negligent conduct. However, the fact that the debtor's conduct in this regard, whether negligent or innocent, was used by another person, without debtor's knowledge, as part of a willful and malicious scheme does not make the conduct wrongful for purposes of section 523(a)(6).

The fact that debtor may have engaged in this conduct while intoxicated raises two questions: (1) Whether intoxication makes otherwise innocent or negligent conduct wrongful under section 523(a)(6); and (2) Whether intoxication constitutes just cause or excuse.

As to the first question, we do not believe that the fact that debtor may have

been intoxicated raises his conduct to the wrongful level required under section 523(a)(6). Although the Ninth Circuit and this Panel have held that driving while intoxicated is willful and malicious conduct under section 523(a)(6), *see In re Adams*, 761 F.2d 1422 (9th Cir.1985); *In re Ray*, 51 B.R. 236 (9th Cir. BAP 1985),[4] the drunk driving cases are distinguishable from this case. Operating a motor vehicle while intoxicated is a dangerous activity where injury to another is, at the very least, a highly foreseeable consequence.[5] In such circumstances, the inherent danger of driving while intoxicated provides the culpability required for section 523(a)(6). Signing checks prepared by other agents of a business entity while intoxicated, however, is not a dangerous activity. Injury to another is not a foreseeable result of such conduct. Although injury to another may occur, as in this case, the injury is caused by the intervening culpable acts of another party. Therefore, the fact that debtor may have been intoxicated when he signed the checks does not make that conduct wrongful under section 523(a)(6). Because the conduct of the debtor in signing the checks was not sufficiently wrongful, the Panel need not address whether intoxication constitutes sufficient justification or excuse for the wrongful conduct to avoid nondischargeability under section 523(a)(6).

2. *Whether the bankruptcy court committed reversible error in relying upon evidence of debtor's alcohol abuse when neither the pleadings nor the pre-trial order specifically mention such alcohol abuse.*

CSB argues that the bankruptcy court erred in considering debtor's "defense of intoxication" because the defense was not affirmatively plead and was therefore waived.

This entire argument is based upon the premise that the intoxication or alcohol abuse of the debtor is an affirmative defense. Affirmative defenses do not simply negate an element of the plaintiff's *prima facie* case, they raise matters extraneous to the *prima facie* case. *Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 546 (6th Cir.1986). In this case, the debtor's alcohol abuse was used as a means of explaining his lack of knowledge of the kiting scheme. As such it was used to negate CSB's contentions that debtor was a knowing participant in the scheme and that debtor intentionally engaged in wrongful conduct that necessarily resulted in injury. Thus debtor's alcohol abuse was not an affirmative defense and was placed in issue by the debtor's denial as well as the pre-trial order. Accordingly, we determine that the bankruptcy court did not err in considering evidence of debtor's alcohol abuse or intoxication.

3. *Whether CSB should be sanctioned on appeal.*

Debtor contends that CSB should be sanctioned on appeal under Bankruptcy Rule 9011 because CSB misstated the record to mislead the Panel, because CSB raised the accord and satisfaction issue in bad faith and because CSB misstated the bankruptcy court's findings of fact.

Although Rule 9011 is not applicable to bankruptcy appeals, *see In re Film Ventures International, Inc.*, 89 B.R. 80 (9th Cir. BAP 1988), the Panel may award sanction for a frivolous appeal under Fed. R.App.P. 38. *In re Burkhart*, 84 B.R. 658, 661 (9th Cir. BAP 1988). A frivolous appeal is one where the result is obvious or the arguments are wholly without merit. *Id.* Under this standard, this appeal is not frivolous.

Furthermore, even if Rule 38 provides authority for sanctions for misstating the record or raising bad faith arguments, we do not believe that CSB should be sanc-

---

4. Section 523(a)(9), which excepts from discharge liabilities incurred as a result of the debtor's operation of a motor vehicle while legally intoxicated, was not directly involved in either *Adams* or *Ray* because those cases arose before the effective date of that section. *Adams*, however, determined that section 523(a)(9) provided clarification for the law in effect at that time and relied on section 523(a)(9) in construing section 523(a)(6).

5. *In re Darsey*, 93 B.R. 299 (Bankr.M.D.Ga. 1988), which was cited by CSB, involved operating a construction crane while intoxicated. Similar to operating a motor vehicle while intoxicated, such conduct is dangerous and involves a highly foreseeable risk of injury.

tioned for the reasons relied upon by the debtor. CSB eliminated any confusion resulting from its inclusion in the record of incorrect findings and conclusions when it moved to correct the record by submitting the correct documents. CSB's mention of the accord and satisfaction defense was in anticipation of a defense that the debtor raised below but did not raise on appeal.[6] Finally, although CSB has arguably misrepresented the record, any misrepresentations in this case do not rise to the level of sanctionable conduct.

### CONCLUSION

The evidence supports the bankruptcy court's determinations that the wrongful conduct of James Chadick is not properly imputed to the debtor, that the debtor was not a knowing participant in the kiting scheme, and that the debtor did not personally engage in any willful or malicious conduct. Accordingly, we affirm the bankruptcy court's determination that the debt is dischargeable.

---

**6.** In the court below, debtor contended that the promissory note satisfied the liability for the kiting scheme and therefore the dischargeability of the liability on the note rather than the underlying debt should be examined. The bankruptcy court did not decide this issue and the debtor did not raise it on appeal. Therefore, the Panel need not address the merits of the issue raised by CSB's accord and satisfaction argument.