**In re Franklyn D. ROSE, Debtor.**

**Taeko Tsukakhara ROSE, Plaintiff,**

**v.**

**Franklyn D. ROSE, Defendant.**

**Bankruptcy No. 92BK–12525.
Adv. No. 92AP–1183.**

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

June 16, 1993.

Kenneth W. Campbell, Ruston, LA, for debtor.

Ellen Eade, Verlander & Eade, Monroe, LA, for plaintiff.

### REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter comes before the Court on the complaint of the plaintiff, Taeko Tsukakhara Rose, to determine whether or not the debtor, Franklyn D. Rose, can discharge a state court judgment awarding her an interest in his military retirement benefits. Plaintiff alternatively seeks a determination that Mr. Rose's discharge be denied under 11 U.S.C. § 727. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these Reasons, there will be judgment in favor of the plaintiff and against the defendant decreeing the obligation non-dis-

chargeable under 11 U.S.C. §§ 523(a)(4) and (6). The remainder of the relief sought by the plaintiff is denied.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The parties have stipulated to the following facts:

"Mrs. Rose and the defendant were married on August 11, 1958 while the Defendant was serving in the United States Military. Mrs. Rose is a native of Japan who the Debtor brought to the United States to set up homemaking in 1959. When the Debtor's overseas tours ended, he retired from the military in 1972.

Mrs. Rose did not work outside of the home and cared for the parties' two minor children until 1977 when the Defendant left her. A judgment of legal separation was signed on February 17, 1977 in the Third Judicial District Court, Lincoln Parish, Louisiana. Thus, the matrimonial community property regime then existing between the parties was terminated.

A property settlement between the parties was thereafter executed on April 12, 1977. The parties were divorced by judgment signed on April 12, 1979 in which an award of alimony and child support was made to Mrs. Rose. On that same day, an amendment to the community property agreement was signed providing for division and distribution of military retirement benefits. The amended property settlement stated that Mrs. Rose would receive 7/20th of the gross amount of each military retirement pension check beginning May 1, 1979 with payment continuing thereafter. When the parties signed the amendment to the property settlement they agreed that Mrs. Rose was owed additional sums for her interest in the past military retirement benefits which had been received by the Debtor from the time of the parties separation judgment through the date of the amendment. This amount was made due by execution of a

promissory note payable to Mrs. Rose by the Defendant.

The Defendant made payments to Mrs. Rose under the terms of the amendment and the promissory note until November 1, 1981, when he stopped making all payments whatsoever. Thereafter, the Debtor filed a rule to terminate alimony. Mrs. Rose filed a suit to recover amounts due under the promissory note, which action was consolidated for trial on October 15, 1982 with the rule to end alimony. The parties agreed that the Debtor would pay the sum of $750.00 in settlement of any claims Mrs. Rose had with respect to the promissory note and agreed to the termination of alimony. The entitlement to receive future military benefits was not addressed at this hearing.

On May 18, 1983, Mrs. Rose instituted a suit for payment of her property rights set out in the amendment of her community property agreement. Trial was held on August 25, 1983 to determine Mrs. Rose's right in accordance with the amendment to receive payments beginning November 1, 1981 and continuing thereafter.

The Third Judicial District Court, Parish of Lincoln, Honorable James Dozier rendered written reasons for judgment on February 1, 1985. Thereafter, on February 12, 1985, a judgment was signed in accordance with the written reasons. The Court found that the property agreement and its amendment were valid and ordered the Defendant to pay the amounts owed monthly from November 1, 1981 and to continue to comply with the agreement thereafter.

The Debtor, after moving for a new trial and receiving a reconsideration resulting in the identical judgment as previously entered, appealed the case to the Second Circuit Court of Appeals [for the State of Louisiana] in that matter styled *Rose v. Rose*, reported at 483 So.2d 181 (La.App. 2d Cir.1986). The Louisiana Court of Appeals affirmed the judgment and remanded the case for determination of the amount owed to Mrs. Rose. Thereafter, the Defendant appealed the decision to the Louisiana Supreme Court where it was not considered. *See Rose v. Rose*, 484 So.2d 655 (La.1986) (sic) 484 So.2d 665 (La.1986).

On remand, an accounting of the Defendant's military retirement pay from May 1979 to July 1987 was introduced into evidence. The Court found that the language of the property agreement and its amendment should be enforced and awarded Mrs. Rose 7/20ths of the gross retirement pay in accordance with the terms of the property agreement and its amendment. The Court also found the accrued arrearage amount due under the agreement was $20,261.50 plus judicial interest and court costs.

The Defendant being unsatisfied with this ruling from the trial court, again appealed the decision to the Louisiana Second Circuit Court of Appeals. However, on this occasion, the Court required that the Debtor post a $10,000.00 appeal bond. When the Second Circuit Court of Appeals affirmed the trial court's determination that the sum of $20,261.50 representing arrearage owed to Mrs. Rose under the agreement together with interest, costs and future payments, the Defendant again appealed the decision to the Louisiana Supreme Court. *See Rose v. Rose*, 535 So.2d 1167 (La.App.1988). The denial of the Defendant's application for Writs of Certiorari and/or Review is found at 559 So.2d 1372 (La.1990)...."

Pre-trial Stipulation, "Admitted Facts," pages 6–10.

Ultimately, the only payment made on the arrearage judgment was the sum of $9,569.74 which was paid out of the appeal bond after an adjustment for court costs. This payment resulted in a reduction of the principal amount to $16,458.94. Id., p. 11. Mr. Rose filed bankruptcy on August 25, 1992.

### Contentions of the Parties

Mrs. Rose contends that the obligation is not a debt subject to discharge but rather an award to her of her property. Further, she argues that the award is one for support and is thus non-dischargeable under 11

U.S.C. § 523(a)(5); that debtor has breached a fiduciary to her under § 523(a)(4); and, alternatively, that the discharge should be denied in its entirety based on allegedly false statements or oaths made in connection with the filing.

Debtor contends that he ceased to make the payments "because he believed under federal decisions that he had a right to keep the money as his own." Pre–Trial Stipulation, page 6. Defendant questions whether " ... the law allow[s] discharge of a debt if the defendant relied on the advice of counsel and ceased making payments following the *McCarty* [*McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)] decision?" Pre–Trial Stipulation, page 13.

In his pre-trial memorandum, defendant expands this contention as follows:

"We will further show that defendant, after learning of the *McCarty* decision, believed and was advised, and so advised plaintiff, that he was the owner of the property (retirement benefits), that he had a right to retain it all, and he had no obligation to turn it over to plaintiff at the time that he retained the payments...." [*citing Thomas v. Lyles*, 47 B.R. 27 (Bkrtcy.1984).]

Pre–Trial Memorandum, p. 3.

In *Thomas*, the Court observed:

"... To the extent the Debtor can show he formed a good faith belief he no longer had to pay over these funds during the *McCarty* era, then these missed payments may not be part of his conversion."

47 B.R. 27 at 34.

### Analysis

This case is virtually identical to the case of *Russell v. Russell*, 141 B.R. 107 (Bkrtcy. W.D.La.1992) in which this Court concluded that pre-petition arrearages under a former wife's judicially established sole and separate property award were non-dischargeable under both 11 U.S.C. § 523(a)(4) and (6). This Court reaches the same result on these facts regarding the property issue and need not address the plaintiff's additional contentions (some of which are addressed in *Russell* ).

A number of Courts have reached similar results. *See, e.g., Matter of Ledvinka*, 144 B.R. 188 (Bkrtcy.M.D.Ga.1992) (concluding that the former wife's rights to the property under a divorce settlement were her separate property and not subject to a discharge); *In re Stolp*, 116 B.R. 131 (Bkrtcy. W.D.Wis.1990) (holding that the award was a *fait accompli*, at the time of filing and not property of the estate); *In re Teichman*, 774 F.2d 1395 (9th Cir.1985) (holding that post-petition payments were not debts and also relying on a defalcation under 11 U.S.C. § 523(a)(4)); *In re Zick*, 123 B.R. 825 (Bkrtcy.E.D.Wis.1990) (portion awarded under decree not husband's property when filing occurred and not subject to discharge); *In re Fristoe*, 151 B.R. 81 (W.D.Va.1993) (holding that wife was vested with property interest, husband had none, only a conduit).

These reasons need only address Mr. Rose's alleged reliance on "federal decisions" under § 523(a)(6). The debtor in *Russell* also relied on that section. Discussion of both the law under that section and Mr. Rose's testimony is required.

### 11 U.S.C. § 523(a)(6)

In *In re Chris J. Roy, A Law Corp.*, 130 B.R. 214 (Bkrtcy.W.D.La.1991), the attorney-debtor relied on his understanding of the legal effect of an agreement between himself and former partners and also on his ethical beliefs concerning the matter. This Court's judgment in *Roy* was affirmed by the district court. *Roy v. Gravel*, 143 B.R. 825 (W.D.La.1992). In the words of the district court, "[t]he Fifth Circuit has held 'willful' to mean an intentional act and 'malicious' to mean an act done without just cause or excuse...." "To fall within the purview of § 523(a)(6), it is sufficient that Roy disregarded the provisions of the dissolution agreement, purposefully failed to segregate the amounts that rightfully belonged to all the partners, and wrongfully used those amounts for his own benefit." 143 B.R. 825 at 829. *See also Chrysler Credit Corp. v. Perry*

*Chrysler Plymouth, Inc.,* 783 F.2d 480 (5th Cir.1986); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241 (5th Cir.1983).

Mr. Rose testified that he relied on a letter dated January 20, 1983, from his attorney concerning the state court litigation. The letter to Mrs. Rose's attorney mentioned the *McCarty* decision in discussion and the attorney's discussion with Mr. Rose advising him that he was no longer obligated to pay the fractional portion of his retirement checks. Exhibit D–1.

Mr. Rose, for a layman, displays an impressive familiarity with the Supreme Court rulings and Acts of Congress regarding military retirement benefits. He testified as to the specific effective date of the enactment of the "Uniformed Services Former Spouses Protection Act," Pub.L. No. 97–252, which he maintained became effective in January of 1983, noting that it "went in with a military appropriations bill." [1]  Mr. Rose sparred with the Court during questioning at the trial as to whether Congress had the power to legislatively overrule an opinion of the United States Supreme Court.

As noted by the Second Circuit in *Rose v. Rose,* 483 So.2d 181 (La.App. 2 Cir.1986) the State Court expressly rejected Mr. Rose's reliance on *McCarty* on January 22, 1986, as follows:

> "The defendant argues on appeal that the trial court erred in holding that the military retirement pay attributable to his years of service in the armed forces was community property. He contends that the United States Supreme Court case of *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which holds that the federal scheme of military retirement benefits preempts state community property laws, should be applied retroactively to this case. Under this authority, he claims he is entitled to consider the military retirement benefits as his separate property.
>
> The defendant's contention is without merit. As noted by the trial court the 'Uniformed Services Former Spouses

Protection Act' Pub.L.N. 97–252, Title X, S1002(a), 10 U.S.C.A. § 1408(c)(1) effective February 1, 1983, legislatively overruled *McCarty v. McCarty, supra....*" 483 So.2d 181 at 183.

As this Court noted in the *Roy* case, *supra,* the debtor's theory died in the state court. More importantly, Mr. Rose's theory died in Congress, by an act effective February 1, 1983, just slightly more than 10 days from the date of the letter at issue.

As noted, Mr. Rose's testimony is replete with specific dates and citations. He testified that his ultimate reliance is not on *McCarty,* which at best would allow him only a few days refuge but that, in his opinion, the judgment at issue erroneously included his disability pay. That, he avers, is improper under the Supreme Court's post-*McCarty* decision in *Mansell,* which he also cites by name.

In *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) the Supreme Court determined that state courts may not, based on the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, treat as divisible property after divorce military retirement pay waived by the retiree in order to receive disability benefits.

In debtor's original answer, he maintained that the amendment to the partition agreement was "... entered into under an error of law and of fact in believing that she had a right to a portion of the complete military benefits when in fact she only had a right to a 35% share of the military retirement but not to his disability and then in the military retirement only to the disposable portion." Answer filed January 19, 1993, article 8.

However, in the Pre–Trial Stipulation, the parties stipulated that "[t]he 'judgment' does not include allocation to Plaintiff of amounts received by the Debtor as a result of military disability pay." Pre–Trial Stipulation, Page 19.

Thus, in the final analysis, Mr. Rose's rationale for non-payment is not a reliance

---

**1.** Mr. Rose erred by only one day in the effective date.

on *McCarty* but on *Mansell.* Having stipulated that Mrs. Rose's claim does not include disability amounts affected by that decision, he can scarcely be heard to rely on that case as a just cause or excuse; or as a basis for good faith.

### CONCLUSION

For the reasons set forth, there will be judgment herein in favor of the plaintiff and against the defendant decreeing the obligation due the plaintiff in accordance with the judgment of the Third Judicial District Court in Civil Suit No. 32,805, nondischargeable. The remainder of the relief sought by the plaintiff is denied.