In re Phillip RUSHING.

Jana D. BLACKWOOD, Plaintiff,

v.

Phillip L. RUSHING, Defendant.

Bankruptcy No. 93–50150S.
Adv. No. 93–5009.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Dec. 17, 1993.

11. The parties do not dispute that this amount is, pursuant to § 506(c), properly chargeable to Lin-     coln Bank.

Richard Ramsay, Little Rock, AR, for plaintiff.

Jeffery Kearney, Pine Bluff, AR, for debtor.

Walter M. Dickinson, Little Rock, AR, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the complaint to determine dischargeability. The plaintiff Jana Blackwood, the ex-wife of the debtor, seeks a determination that the debtor may not discharge certain debts jointly owed by the parties, pursuant to 11 U.S.C. § 523(a)(3), (4), (6).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

On May 14, 1992, the Chancery Court of Jefferson County, Arkansas, issued a divorce decree which provided that the parties would sell their jointly owned mobile home and real property. Upon sale, the parties would divide equally any profit or debt. The Decree specifically provided:

> That the parties own certain five (5) acres of real property at Route 9, Box 252 BB, Kilcrease Road, Pine Bluff, Arkansas 71603, along with a mobile home at said location. That the parties agree to offer this property immediately to the current tenants, Brent and Tammy Stroud, for sale for $35,000.00. Should the tenants decline the offer, the parties will offer the land and mobile home for sale through a mutually agreeable realtor at its current market value. All net proceeds from the sale of this home after payment of the current indebtedness, to Greentree Acceptance, and to Tommy Kilcrease, should be divided equally between the Plaintiff and Defendants.

*Plaintiff Exhibit 1,* at 2, ¶ 7.

At the time of the divorce, payments on the debt on the real property were current. The Strouds declined to purchase the property and plaintiff found a realtor. The debtor refused to sign the listing agreement, but offered no credible reason to Ms. Blackwood for his refusal.[1] Later, when plaintiff located a person willing to purchase the property for an amount which would have paid the mortgage in full, the debtor deliberately obstructed the sale of the property. When contacted by the prospective buyer, debtor told the buyer that he was not interested in selling the property, and, later, refused to sign any documents relating to the proposed sale.

While the debtor asserted that he took these actions on the advise of counsel, the Court does not believe these statements. The only credible evidence before the court is that the debtor was retaliating against the plaintiff in a dispute regarding visitation rights with the parties' child.

---

1. The debtor asserted that "as far as I know" and "to the best of my knowledge" his attorney told him not to sign the document. This testimony was rebutted by the affidavit of debtor's divorce counsel who denied making any such statement. Even without the affidavit, the over qualifying terminology, as well as debtor's general demeanor, robbed the statements of any credibility.

In addition to the evidence of his obstructing the sale of the property, the debtor converted the rental monies he received with regard to the property. Each month, the tenants paid rent to the debtor who was obligated to remit the mortgage payment on the real property and mobile home to Green Tree Acceptance Corporation, the mortgagee. This the debtor failed to do. Plaintiff learned of this conversion only upon foreclosure of the property.

On April 19, 1993, the debtor filed for protection under Chapter 7 of the Bankruptcy Code, omitting plaintiff as a creditor or co-debtor, despite the fact that she was a co-debtor on several of the debts. Thus, plaintiff received no notice of the bankruptcy proceedings until after Green Tree foreclosed upon the real property.[2] Later, the real property having been repossessed by Green Tree, it was sold, with a deficiency in the amount of $5,400 remaining.

The plaintiff asserts that the debtor's actions in obstructing sale of the property and converting the funds constituted willful and malicious injury causing the deficiency judgment such that the debtor should not be discharged from any obligation to pay the deficiency, pursuant to section 523(a)(6). Secondly, plaintiff asserts that a fiduciary relationship existed between the parties such that the failure of the debtor to remit the rental monies to Green Tree constitutes a defalcation under section 523(a)(4). Finally, plaintiff asserts that the debt should be nondischargeable pursuant to 11 U.S.C. § 523(a)(3) as she received tardy notice of the bankruptcy case. Inasmuch as the Court determines that the debt is nondischargeable pursuant to section 523(a)(6), the Court need not address the issues raised under paragraphs 523(a)(3) and (a)(4).

■ The Bankruptcy Code provides that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.[3]

11 U.S.C. § 523(a)(6). "Willful" means an intentional act and "malicious" means an act done without just cause or excuse. *Roy v. Gravel,* 143 B.R. 825 (W.D.La.1992), *aff'd,* 983 F.2d 1062 (5th Cir.1993); *Reid v. Reid,* 149 B.R. 669, 672 (Bankr.D.Kan.1992). Generally, malice must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989). Thus, to fall within the purview of section 523(a)(6), it is sufficient that the debtor intentionally disregarded the provisions of the divorce decree, and, with the knowledge that the failure would harm Ms. Blackwood, proceeded to act in contravention of the decree and the obligations it imposed. *See In re Rose,* 155 B.R. 394, 397 (Bankr. W.D.La.1993).

Debtor's purposeful failure to effect the terms of the divorce decree and to make the payments on the mortgage constituted willful and malicious injury within the meaning of section 523(a)(6). *See In re Rose,* 155 B.R. 394 (Bankr.W.D.La.1993). The debtor willfully and maliciously injured the plaintiff, Ms. Blackwood, by obstructing the sale of the subject real property, which obstruction resulted in a deficiency judgment against both parties in the amount of $5,400. Despite directly receiving funds belonging to both parties with which to make the mortgage payments, the debtor failed to keep the mortgage payments current. Had the debtor not obstructed the sale, the property would have sold for an amount at least equal to the mortgage on the property such that a deficiency would not have resulted from sale of the property.[4]

---

2. It was not until September 17, 1993, nearly two months after the complaint to determine dischargeability was filed, that the debtor bothered to list Ms. Blackwood as a co-debtor.

3. "Entity" includes a person. 11 U.S.C. § 101(15).

4. There was also evidence that debtor acted in contravention of section 523(a)(6) with regard to other joint debts. For example, it appears the parties are also liable with respect to a washer and dryer purchased on credit. Debtor is in possession of those items of property.

Debtor argues that the doctrine of unclean hands prohibits Ms. Blackwood from obtaining a nondischargeability judgment. Debtor argues that Ms. Blackwood failed to comply with the provisions of the agreement designed by her, and secondly, that she prosecuted the divorce action in bad faith.

 Under Arkansas law "the clean hands maxim bars relief to those guilty of improper conduct in the matter as to which they seek relief. . . . Equity will not intervene on behalf of a plaintiff whose conduct in connection with the same matter has been unconscientious or unjust." *Merchants & Planters Bank & Trust Co. of Arkadelphia,* 302 Ark. 421, 790 S.W.2d 889, 891 (Ark.1990). The doctrine only applies, however, to improper conduct in the matter as to which plaintiff seeks relief. *Thorne v. Magness,* 34 Ark.App. 39, 805 S.W.2d 95, 97 (Ark.Ct.App. 1991). *See Saxon v. Blann,* 968 F.2d 676 (8th Cir.1992).

There is no credible evidence that Ms. Blackwood failed in any manner to comply with the terms of the decree. Indeed, the evidence indicates that she made every effort to comply with the terms of the decree and attempted to effect a sale of the property pursuant to the decree. The only evidence before the Court is that the debtor not only failed to comply with the terms of the decree, but willfully and maliciously blocked Ms. Blackwood's efforts to give effect to the decree.

The Court does not find credible debtor's assertion that the decree and the terms thereunder were obtained in bad faith. The only evidence regarding "bad faith" was debtor's statement that he was in the hospital and under medical and psychiatric care at the time of the divorce. However, debtor never testified that he was incompetent to sign the papers; he never testified that he was not cognizant of the terms and their effect; debtor never even testified that he believed the terms to be unfair. Debtor merely implies that since he was under medical care, enforcement of the decree is somehow improper.

The evidence belies this assumption. Debtor was ably represented by counsel throughout the divorce proceedings. There was no evidence in any form that he was unable to understand the terms of the agreement or their effect. Indeed, the evidence showed that when the proposed decree was discussed with him, his medical care givers were present at the meeting to ensure that he indeed understood the implications of the document. Accordingly, the Court finds that no bad faith or improper conduct occurred with regard to the signing or entry of decree on the part of Ms. Blackwood such that the defense of unclean hands is unavailing.

The factual nature of these proceedings made the credibility of the witnesses especially important. At all times, Ms. Blackwood presented a demeanor consistent with truthfulness. Her statements were direct and unequivocal. In contrast, the debtor was equivocal. When asked specific questions, debtor invariably prefaced his responses with the "best of knowledge" qualification. When specifically asked if his attorney told him not to sign the listing agreement, debtor only replied that, "as far as I know he did." The only statement debtor made consistent with the truth in this case was his admission that the real issue in his mind, the real reason for his behavior, was the dispute over visitation.

**ORDERED** that judgment will be entered in favor of plaintiff, Jana D. Blackwood. All joint debts of the plaintiff and debtor are nondischargeable in this bankruptcy case. 11 U.S.C. § 523(a)(6).

**IT IS SO ORDERED.**